UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DOUGLAS A. JOHNSON,

    Plaintiff,

v.                                               Case No. 1:12-cv-114
                                               Hon. Paul L. Maloney

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
    _____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on November 10, 1958 (AR 147).[1] He completed a GED in 1988 (AR 159). Plaintiff alleged a disability onset date of July 18, 2007 (AR 31).[2] He had previous employment as a warehouse laborer, fork lift operator, pallet builder, factory worker, apartment maintenance worker, plastic mold machine operator and stocker in a department store (AR 19, 153). Plaintiff identified his disabling condition as rheumatoid arthritis, arthralgias and hepatitis C (AR 152). Due to these conditions, plaintiff asserted that he is very tired, has a weight lifting limitation due to surgery, had joint pain and migraine headaches related to the hepatitis, and memory problems due to his medications (AR 152). On August 26, 2010, an ALJ reviewed plaintiff's claim *de novo*

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] The court notes that plaintiff had initially alleged a disability onset date of January 5, 2004 (AR 147).

and entered a decision denying benefits (AR 13-21). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful

2

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

The ALJ found that plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of July 18, 2007 through his last insured date of June 30, 2009 (AR 15). At step two, the ALJ found that through the last insured date, plaintiff suffered from severe impairments of: hepatitis C; impingement syndrome and torn rotator cuffs of both shoulders, status post bilateral rotator cuff decompression; headaches; a history of alcohol abuse; and depression (AR 15). At step three, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listings 1.02 (Major dysfunction of a joint(s) (due to any cause)), 1.04 (Disorders of the spine), 5.05 (Chronic liver disease), 12.04 (Affective disorders) and 12.09 (Substance addiction disorders) (AR 15).

The ALJ decided at the fourth step that through the date last insured, plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b):

> The claimant can lift or carry 20 pounds occasionally and 10 pounds frequently; could stand, sit, or walk for at least six hours in an eight-hour work day, but could not walk for more than 100 feet at one time, and required the option [sic] alternate between sitting and standing at will. The claimant could perform no repetitive pushing, pulling, or reaching with either upper extremity; no repetitive gripping or grasping with either hand; was required to avoid concentrated exposure to noises; could never use air, pneumatic, power, torque, or vibratory tools; and could never work with dangerous or unprotected machinery, or at unprotected heights.

(AR 15-16). The ALJ further found that through the date last insured, plaintiff was unable to perform any of his past relevant work (AR 19).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 19). Specifically, plaintiff could perform the

4

following jobs in the regional economy (defined as the Lower Peninsular of Michigan): sorter/folder (3,000 positions); collator/operator (5,000 positions); and general office clerk (8,000 positions) (AR 20). Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, at any time from July 18, 2007 (the alleged onset date) through June 30, 2009 (the date last insured) (AR 21).

### III. ANALYSIS

Plaintiff has raised four issues on appeal.

**A. Did the ALJ violate SSR 96-8p in not considering the effect of the claimant's frequent headaches and insomnia on his ability to work?**

Plaintiff contends that the ALJ failed to include the severe impairment of headaches in the RFC determination, citing SSR 96-8p, which provides in pertinent part that "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments."[3] Plaintiff's Brief at p. 10. In support of his claim, plaintiff relies on his 32-page summary of the medical evidence of record ("MER") attached to his brief. *See* Appendix (docket no. 17-1). Plaintiff does not direct the court to any particular section of this appendix, other than to request the court to review it and draw its own conclusions regarding plaintiff's medical condition. Plaintiff's Brief at p. 9. Plaintiff's request that this court review his summary of the medical record, as opposed to the administrative record, would effectively result in a *de novo* review

---

[3] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed.Appx. 496, 498 (6th Cir. 2006), quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 549 (6th Cir.2004) (citations omitted).

of selected portions of the medical record by this court. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard*, 889 F.2d at 681.

The ALJ found that plaintiff's severe impairments included "headaches" (AR 15). Plaintiff testified that he gets headaches "four or five times a day, sometimes more," that the headaches last "from an hour or two" to "all day," and that he has felt nauseous "quite a few times" (AR 51-52). Plaintiff treats the headaches by placing a frozen wrap across his forehead and taking pills prescribed for joint pain (AR 52). The ALJ recognized plaintiff's complaints and summarized as plaintiff's claim that "he is experiencing headaches up to five times a day for up to two hours at a time, and sometimes the whole day, but he has not received treatment for the headaches" (AR 18). The ALJ noted that in May 2006, plaintiff had a normal CT scan, which was performed in response to plaintiff's complaints of headaches (AR 17, 344).

The ALJ rejected plaintiff's claims of disabling headaches based upon the normal CT scan in 2006 and plaintiff's failure to seek treatment for the multiple daily headaches. Plaintiff does not point to any evidence in the medical record which supports his claim of seeking treatment for daily headaches during the relevant time period of July 18, 2007 through June 30, 2009. In his reply, plaintiff points out complaints of headaches made while at the University of Michigan Hospital in July 2005, some two years prior to his alleged onset date (AR 211-33). Plaintiff's Reply Brief at p. 1. Records from that date reflect that plaintiff had a past history of rheumatoid arthritis (diagnosed 15 years ago), hepatitis C (contracted perhaps 20 years ago) and alcoholism (last used 5 to 6 years ago) (AR 213-14), and that he complained of "fatigue, sleeping too much, headaches, sensitive to sun, intolerance to heat or cold, occasional dry mouth, night sweats, insomnia, snoring, constipation and diarrhea" (AR 214). In September 2005, plaintiff reported new headaches since

6

beginning a hepatitis C treatment regimen (AR 224). The doctor noted that patients on hepatitis C treatment often experience severe enough symptoms that "could potentially be disabling" and that plaintiff's headaches "are quite severe during the 3 days around the treatment and may prohibit him from working during that time" (AR 225-26). His treatment ended in May 2006, at which time his only complaint was bursitis (AR 231-32). While this treatment ended more than one year before the alleged disability onset date, the ALJ appeared to address this complaint by including a restriction that plaintiff "must avoid concentrated exposure to noises" (AR 18).

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high that, in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

7

While plaintiff reported headaches prior to his alleged disability onset date (i.e., while undergoing hepatitis C treatment in 2005 and 2006), there is no evidence that he was treated for severe headaches during the relevant time period. The ALJ rejected plaintiff's claim of disabling headaches based upon contradictions in the medical records, claimant's testimony, and other evidence. *See Walters*, 127 F.3d at 531. There is not an adequate basis on this record for the court to disturb the ALJ's determination.[4]

>**B. Did the ALJ fail to comply with 20 C.F.R. § 404.1527 in not according adequate weight to the opinion of the claimant's treating physician and did the ALJ fail to consider the various factors set forth in 20 C.F.R. § 404.1527(d) in evaluating the opinion of the treating physician?**

Plaintiff contends that the ALJ failed to accord adequate weight to the opinion of a treating physician, Joe D. Patton, M.D. Specifically, plaintiff refers to Dr. Patton's opinion expressed in a Medical Needs form provided to the State of Michigan, Department of Human Services, dated January 14, 2010 (AR 497-99). *See* Plaintiff's Brief at pp. 11-12. At that time, Dr. Patton listed plaintiff's diagnoses as chronic hepatitis C and rheumatoid arthritis (AR 498). The ALJ rejected this report on various grounds: the report did not indicate that plaintiff needed medical assistance for his personal care activities (such as dressing, meal preparation, shopping and housework); it did not indicate that the doctor only needed to see plaintiff on a quarterly basis, indicating that the nature of plaintiff's medical condition might not be as severe as alleged. The ALJ also rejected the doctor's evaluation because it "not only postdates the claimant's date last insured

---

[4] The court notes that plaintiff's issue on appeal refers to his insomnia. However, he does not address this condition in his brief. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Thus, the court deems this argument waived.

8

of June 30, 2009" but was inconsistent with plaintiff's later treatment records of December 24, 2009 and March 25, 2010, during which plaintiff complained only of intermittent dull aching elbow pain that was aggravated by physical activity (AR 18).

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). If a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case," then the agency will give the opinion controlling weight. 20 C.F.R. § 404.1527(c)(2).

An ALJ is not bound by the conclusory statements of doctors, however, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Here, while the ALJ critiqued Dr. Patton's January 14, 2010 opinion, he failed to discuss what weight, if any, he gave to that opinion. This error, however, is harmless because the doctor's opinion reflected plaintiff's condition on January 14, 2010, more than six months after plaintiff's last insured date of June 30, 2009. While Dr. Patton's opinion from January 14, 2010 reflects plaintiff's condition as of that date, the records do not reflect his condition during the time period of plaintiff's DIB claim (i.e., July 18, 2007 through June 30, 2009). "[I]nsured status is a requirement for an award of disability insurance benefits." *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir.1984). Since plaintiff's insured status for purposes of receiving DIB expired on June 30, 2009, plaintiff cannot be found disabled unless he can establish that a disability existed on or before that date. *Id.* "Evidence relating to a later time period is only minimally probative." *Jones v. Commissioner of Social Security*, No. 96–2173, 1997 WL 413641 at *1 (6th Cir. July 17, 1997), citing *Siterlet v. Secretary of Health & Human Services*, 823 F.2d 918, 920 (6th Cir. 1987) (where

10

doctor examined the claimant approximately eight months after the claimant's insured status expired, the doctor's report was only "minimally probative" of the claimant's condition for purposes of a DIB claim). Evidence of a claimant's medical condition after the last insured date is only considered to the extent it illuminates that condition before the expiration of the claimant's insured status. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988). In this instance, the conditions diagnosed by Dr. Patton (hepatitis, rheumatoid arthritis) were ones which could have worsened over time, and their degree of severity at the time of examination is not necessarily instructive of their severity eight months earlier. In short, Dr. Patton's opinion expressed in January 2010 is at most minimally probative of plaintiff's condition as it existed on his last insured date of June 30, 2009.

"No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). "When 'remand would be an idle and useless formality,' courts are not required 'to convert judicial review of agency action into a ping-pong game.'" *Kobetic v. Commissioner of Social Security*, 114 Fed. Appx. 171, 173 (6th Cir. 2004), *quoting NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969). Accordingly, plaintiff's claim should be denied.

    **C.    Are the ALJ's other credibility findings supported by substantial evidence on the whole record?**

Plaintiff contends that the ALJ did not believe plaintiff's claim that he suffered from fatigue and pain and needed to rest frequently during the day. Plaintiff's Brief at p. 13. Plaintiff does not point out his testimony upon which he relies. *Id.* Rather, plaintiff references hypothetical questions posed to the vocational expert (VE) (AR 63-64) and contends that "[t]he ALJ selectively read the MER to belie the plaintiff's allegations of disabling pain and fatigue." Plaintiff's Brief at

p. 13. Plaintiff contends that "[a] fair reading of all the MER (summary attached as Appendix) leads to a different conclusion." *Id.* Plaintiff has presented no argument of substance on this issue. A court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). The court should deem this argument waived. *See McPherson*, 125 F.3d at 995-96.

> **D. Did the ALJ err in relying on the testimony of the vocational expert (VE), since it conflicted with the *Dictionary of Occupational Titles* (*DOT*) and the limitations in the ALJ's hypothetical question?**

The ALJ posed various hypothetical questions to the VE. The first question included the limitations set forth in the RFC determination, with an additional restriction which limited the hypothetical person to "simply unskilled work with an SVP rating of one or two and work that does not require concentration on detailed, precision, or simultaneous tasks" (AR 60).[5] In response to the hypothetical question, the VE identified 16,000 jobs in the lower peninsula of Michigan which plaintiff could perform (AR 61). Those jobs included the following positions: sorter/folder; collator operator; and general office clerk (AR 61). The ALJ's next hypothetical question added "the need for a sit stand option that enabled the individual to be able to change position at will to relieve pain or discomfort" (AR 61). The VE testified that this additional restriction would not affect the hypothetical person's ability to perform the 16,000 identified jobs (AR 61). In a third hypothetical question, the ALJ included an additional restriction that "the individual would have difficulty persisting at the work effort for a full eight hour work day, without the need for frequent

---

[5] "The Dictionary of Occupational Titles, which is published by the U.S. Department of Labor and relied on by the Commissioner for vocational information, assigns an SVP to each job it lists. SVP is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dikeman v. Halter*, 245 F.3d 1182, 1186, fn. 2 (10th Cir. 2001) (internal quotation marks omitted).

unscheduled rest breaks, [and] the need to recline or lie down periodically during the course of the day" (AR 62). The VE testified that this additional restriction would remove all of the 16,000 identified jobs (AR 62). The VE further testified that the characteristics of the job classifications he identified did not differ from the definitions of those contained in the *Dictionary of Occupational Titles* (*DOT*), with the exception that the *DOT* "does not cover a sit/stand option" (AR 63). The VE testified that he also consulted the following sources:

> Additional materials that I reviewed include Euro Census publications counting business patterns for the state of Michigan. The occupational outlook handbook and it's [sic] statewide companion document, employer surveys which have been conducted historically in this region of the country, [and] my own professional experience in the area over the last 41 years.

(AR 63). Plaintiff contends that the VE erred, because the jobs identified by the VE conflicted with various job descriptions listed in the *DOT*. *Id.* at pp. 15-17.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

13

Plaintiff's objection contests the VE's expert opinion. The record reflects that plaintiff did not contest the VE's expertise to render his opinion at the administrative hearing (AR 57-64). On the contrary, plaintiff's counsel stated that he had no objection to Dr. Engelkes testifying as a VE, and had no questions for the VE (AR 58, 64). Plaintiff cannot contest the VE's qualifications at this late stage. *See Yopp-Barber v. Commissioner*, 56 Fed. Appx. 688, 689-90 (6th Cir. 2003) (claimant cannot complain of the VE's failure to provide statistical evidence in support of his testimony in the absence of an express request by counsel for those statistics); *Helton v. Commissioner*, No. 99-5736, 2000 WL 658056 at *2 (6th Cir. May 9, 2000) (claimant's failure to dispute the VE's competency at the administrative hearing forfeits the issue for purposes of judicial review).

Even if plaintiff could contest the VE's qualifications at this stage, his claim is without merit. The Sixth Circuit has rejected the argument that the Commissioner is bound by the *DOT*'s characterization of occupations, holding that "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's definitions." *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003). *See also Conn v. Secretary of Health & Human Services*, 51 F.3d 607, 610 (6th Cir. 1995) (an ALJ is "within his rights to rely solely on the vocational expert's testimony," even if that testimony conflicts with the *DOT*, because "[t]he social security regulations do not require the [Commissioner] or the expert to rely on classifications in the *Dictionary of Occupational Titles*"). Accordingly, plaintiff's claim of error regarding the VE's testimony should be denied.

**IV. Recommendation**

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.


Dated: December 17, 2012                                      /s/ Hugh W. Brenneman, Jr.
                                                              HUGH W. BRENNEMAN, JR.
                                                              United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).