UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS A. JOHNSON,           )
        Plaintiff,          )
                                )          No. 1:12-cv-114
-v-                           )
                                )          HONORABLE PAUL L. MALONEY
COMMISSIONER OF SOCIAL SECURITY,  )
        Defendant.          )
_____)

## OPINION AND ORDER
## MODIFYING AND ADOPTING REPORT AND RECOMMENDATION

Before this court is a Report and Recommendation issued by Magistrate Judge Brenneman (ECF No. 20) recommending that the court affirm the Commissioner of Social Security's decision to deny Douglas A. Johnson's claim for disability insurance benefits. Plaintiff Johnson has filed timely objections to the magistrate judge's recommendation.

For the reasons discussed below, the court will modify two portions of the Report and Recommendation, adopt it as modified, and affirm the Commissioner's decision.

**I.     STANDARD OF REVIEW**

Parties have 14 days to file written objections to the proposed findings and recommendations in a magistrate judge's report and recommendation ("R&R"). 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). A district court judge reviews *de novo* the portions of the R&R to which objections have been filed, and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Only specific objections are entitled to *de novo* review under the statute, *see Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam), and the statute does not "positively require[] some lesser review by the district court when no objections are filed." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to object to an

issue waives that issue, along with the party's right to appeal that issue. *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *see Arn*, 474 U.S. at 155 (upholding the Sixth Circuit's practice).

"This court's review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is "more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). So long as the Commissioner's decision is supported by substantial evidence, this court must affirm, even if substantial evidence also supports the opposite conclusion and even if the court would have decided the matter differently. *See Smith v. Chater*, 99 F.3d 780, 781–82 (6th Cir. 1996).

## II.   DISCUSSION

Mr. Johnson objects to the R&R on four grounds, corresponding to the four main issues raised before the magistrate judge. The court will address each in turn.

### A.   Did the ALJ Violate Rule 96-8p?

The ALJ who heard this claim found that "headaches" were one of Mr. Johnson's "severe impairments." (AR15.) Nonetheless, the ALJ did not deem these headaches fully disabling, noting:

> The claimant must avoid concentrated exposure to noises. He indicated that he is experiencing headaches up to five times a day for up to two hours at a time, and sometimes the whole day, but he has not received treatment for his headaches.

(AR18.) The ALJ further noted that a CT scan performed in May 2006 showed no abnormalities. (AR17.) On review, the magistrate judge confirmed both points, finding that "Plaintiff does not point to any evidence in the medical record which supports his claim of seeking treatment for daily

headaches during the relevant time period of July 18, 2007 through June 30, 2009 [the alleged disability-onset date and the last date insured, respectively]."

Mr. Johnson seizes on these claims, objecting to the finding that he did not seek treatment for his headaches during the relevant time period.  He fails to point to any evidence to the contrary, however.  While his medical records show that he reported headaches to his doctors on at least one occasion (AR446–47), they do not show that he specifically sought treatment for them, as he did for elbow pain (AR471), neck pain (AR477), sinusitis (AR482), and respiratory symptoms (AR489).  In any case, Mr. Johnson does not make clear just what he hopes to prove here.  He argues that the ALJ erred by failing to consider his headaches' effect on his ability to work.  But as noted above, it appears that the ALJ did make some concession to Mr. Johnson's headaches in stipulating that he avoid "concentrated exposure to noises."  Mr. Johnson apparently wants more than this, but he does not say just what.  His objection presents no argument regarding what additional limitations he believes the ALJ should have imposed based on his headaches.  His original brief before this court appears to argue for total disability—"The Secretary erred in rejecting the opinion of a treating physician that a claimant was disabled as a result of severe headaches" (ECF No. 17, at 14)—but the magistrate judge rejected this argument, and Mr. Johnson does not make this argument in his objection.  In the end, the court is left with the argument that the ALJ should have found *some* further limitation on Mr. Johnson's ability to work.  But this argument is not supported.  The court overrules Mr. Johnson's objection on this point.

In the middle of the discussion of his headaches, Mr. Johnson appears to make an entirely unrelated objection.  He argues that while the ALJ found that his depression caused "moderate difficulties" in "concentration, persistence, or pace" (AR16), these limitations were not reflected in

the hypothetical question asked of the vocational expert. In support, he cites *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010). In that case, the ALJ expressly agreed with a doctor's assessment limiting Mr. Ealy's "ability to sustain attention to complete simple repetitive tasks to '[two-hour] segments over an eight-hour day where speed was not critical.'" *Id.* at 516. The ALJ included no such limitation into his hypothetical, however, instead asking the vocational expert to "assume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings." *Id.* The Sixth Circuit found that hypothetical insufficient. *Id.* at 517.

The problem with this argument is that the ALJ did in fact incorporate a concentration limitation into his hypothetical question. In relevant part, the ALJ asked the vocational expert to consider potential jobs involving "limited simple unskilled work with an SVP rating of one or two and work that does not require concentration on detailed, precision, or simultaneous tasks." (AR60.) While the ALJ's written opinion did not state the same limitation, this appears to have been an oversight, as the ALJ clearly relies on the vocational expert's answer in deciding that Mr. Johnson is not disabled. Because the ALJ did in fact include this limitation into his hypothetical, *Early* does not require remand. The court therefore overrules Mr. Johnson's objection on this point.

### B. Did the ALJ fail to comply with 20 C.F.R. § 404.1527?

Next, Mr. Johnson argues that the ALJ did not give adequate weight to the opinion of his treating physician, Dr. Joe D. Patton. The magistrate judge found that while the ALJ gave several reasons why Dr. Patton's opinion was not fully supported by the evidence, he failed to discuss what weight he actually did give the opinion. This was error, the ALJ held, but a harmless one. Dr. Patton gave his opinion on January 14, 2010, more than six months after Mr. Johnson's insured status ended. Because Mr. Johnson's maladies could have worsened in the intervening time, Dr.

Patton's opinion is "at most minimally probative of plaintiff's condition as it existed on his last insured date of June 30, 2009." (R&R, ECF No. 20, at 11.)

Mr. Johnson objects that Dr. Patton had been treating him for over four years by the time he gave his opinion, and in his almost 100 pages of treatment notes, he nowhere suggested that Mr. Johnson's symptoms had worsened since his last insured date. This argument is unconvincing. Both the ALJ and the magistrate judge stated a number of reasons for finding Dr. Patton's opinion unsupported and inconsistent with other evidence in the record. As the magistrate judge noted, "the opinions of a treating physician 'are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence.'" (R&R, ECF No. 20, at 10 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992)).) Mr. Johnson does not even try to reconcile Dr. Patton's opinion with this evidence. Further, while the medical records do not state that Mr. Johnson's health problems worsened between June 30, 2009 and January 14, 2010, nor do they state the contrary. The claimant bears the burden of proving his disability. 20 C.F.R. § 404.1512(a). Mr. Johnson cannot simply point to a lack of contrary evidence here, particularly given the ALJ's other reasonable concerns about Dr. Patton's opinion. Mr. Johnson's objection therefore fails.

Mr. Johnson also argues that the ALJ failed to follow regulations calling for him to recontact the treating physician to resolve the conflicting or ambiguous evidence. *See* 20 C.F.R. 404.1512(e) (2009) (amended 2011). This argument also fails. For one thing, Mr. Johnson did not make this argument in his original brief before this court. "[W]hile the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits de novo review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were

5

not presented to the magistrate." *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). The argument is therefore procedurally barred. But in any case, "an ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status, not where, as here, the ALJ rejects the limitations recommended by that physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 n.3 (6th Cir. 2009); *see also* 20 C.F.R. 404.1512(e) (2009) (providing for recontacting treating physician "[w]hen the evidence we receive . . . is inadequate for us to determine whether you are disabled") (amended 2011). The ALJ's rejection of Dr. Patton's opinion does not make it inadequate. To the contrary, the ALJ found the opinion more than sufficient to reject on its merits. The ALJ therefore had no reason to recontact Dr. Patton for further information.

Mr. Johnson's objections are therefore overruled.

**C.      Are the ALJ's Other Credibility Findings Supported by Substantial Evidence?**

Third, Mr. Johnson argues that the ALJ "selectively read the [medical records] to belie the plaintiff's allegations of disabling fatigue and pain." He claims that the ALJ's credibility finding here was not supported by substantial evidence, and he argues that the ALJ erred by determining Mr. Johnson's residual functional capacity before considering his credibility. The magistrate judge rejected this out of hand, finding that Mr. Johnson had not presented enough of an argument to address. Mr. Johnson objects.

While it is true, as the magistrate judge notes, that Mr. Johnson's original brief failed to cite any part of the medical record that supports his claim, this court believes that Mr. Johnson's argument is clear enough to address on the merits. Mr. Johnson's argument relies on the Seventh Circuit's decision in *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), which criticized an ALJ's use

of boilerplate language finding the claimant's statements "not credible to the extent they are inconsistent with the . . . residual functional capacity assessment" discussed later in the opinion. *Id.* at 644–45. The ALJ in this case used the same boilerplate language (*see* AR17), and this court agrees with the Seventh Circuit that the language is "meaningless." *Bjornson*, 671 F.3d at 645 (quoting *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010)). But the ALJ in *Bjornson* appears to have used the boilerplate as its only statement about the claimant's credibility, while the ALJ here explained his conclusion in significantly more detail. The ALJ summarized claimant's testimony, including his claimed need to lie down for up to six hours a day and his claim that he is unable to perform the activities of daily living. (AR17.) The ALJ then summarized the medical evidence in the record, noting in particular Dr. Patton's conclusion that Mr. Johnson is totally disabled, which also stated Dr. Patton's opinion that Mr. Johnson did not need assistance with any personal care activities. (*See* AR498–99.) This, of course, directly conflicts with Mr. Johnson's testimony.[1] After considering the record as a whole, the ALJ concluded that "the objective findings of the medical evidence do not support [Mr. Johnson's] allegations, and they are generally inconsistent with the medical evidence." (AR19.)

This consideration of Mr. Johnson's credibility is not perfect. The ALJ could have done a better job of discussing the medical evidence from the relevant time period and comparing those records to Mr. Johnson's claimed limitations. But this is a far cry from the multiple errors and failures discussed in *Bjornson*. The ALJ's conclusion does not lack substantial evidentiary support. The court will therefore reject Mr. Johnson's argument.

---

[1] Both Mr. Johnson's testimony (*see* AR34–56) and Dr. Patton's opinion cover roughly the same time period, and thus Dr. Patton's opinion is more relevant here than it is to the ultimate question of plaintiff's condition as it existed on his last insured date.

**D.      Did the ALJ Err by Relying on the Vocational Expert's Testimony?**

At the administrative hearing, the ALJ asked the expert to consider an individual with Mr.

Johnson's functional limitations, including "no repetitive overhead reaching with either extremity

[and] no repetitive gripping or grasping with either hand." (AR60.)  The expert testified that such

a person could perform sorter/folder, collator/operator, and office clerk positions, of which there

were approximately 16,000 positions.  (AR61.)  The expert also confirmed that his definitions of

these positions did not differ from the definitions set out in the Dictionary of Occupational Titles.

(AR63.)  The ALJ's opinion relied on the expert's testimony to find that Mr. Johnson was not

disabled, as he was "capable of making a successful adjustment to other work that existed in

significant numbers in the national economy." (AR21.)  The ALJ stated that he found "no evidence

to show that [the expert's testimony] is in conflict with information provided in the *Dictionary of*

*Occupational Titles* (DOT) and its companion publication, *The Selected Characteristics of*

*Occupations Defined in the Revised Dictionary of Occupational Titles* (SCO)," as Social Security

Ruling 00-4p requires.  (AR20.)

Mr. Johnson argues that the expert's testimony was not supported and that the ALJ erred by

finding it consistent with the Dictionary of Occupational Titles and by relying on it in his

conclusion.  The Dictionary, he argues, describes each of the positions listed by the expert as

requiring "frequent reaching and handling" or "frequent reaching, handling, and fingering," both of

which are forbidden by the ALJ's restriction on "repetitive gripping or grasping."

Unfortunately, Mr. Johnson provides no citation or exhibit that would allow this court to

confirm his claims.  Even if he had, however, Sixth Circuit case law forecloses this claim.  Mr.

Johnson did not question the vocational expert about these discrepancies at the administrative

hearing, though the ALJ specifically confirmed that the expert's definitions were the same as those in the Dictionary of Occupational Titles. (*See* AR64.) By asking this question, the ALJ fulfilled his duty under Social Security Ruling 00-4p. *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) ("There is little doubt that the ALJ satisfied his obligation under S.S.R. 00–4p by asking VE Breslin about any apparent discrepancies between the information provided by the DOT and that which Breslin himself presented."). After this, the duty of pointing out discrepancies fell to plaintiff's counsel. *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009) ("[T]he ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00–4p. This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT."). Counsel failed to question the expert about these claimed discrepancies or to otherwise bring them to the ALJ's attention. It is now too late to seek relief on this ground. *Id.* at 168–69; *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008); *Hammond v. Chater*, No. 96-3755, 116 F.3d 1480, 1997 WL 338719, *3 (6th Cir. 1997) (unpublished table decision). This claim therefore fails.

## **ORDER**

For the reasons discussed above, **IT IS HEREBY ORDERED** that the report and recommendation (ECF No. 20) is **MODIFIED** to replace its Part III.C and III.D with this opinion's Part II.C and II.D.  With that modification, the report and recommendation is **ADOPTED** as the opinion of this court.  The Commissioner's decision is hereby **AFFIRMED**.

**IT IS SO ORDERED.**

Date:___April 19, 2013___                            _/s/ Paul L. Maloney_____
                                                     Paul L. Maloney
                                                     Chief United States District Judge

10